# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JACE YARBROUGH, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:23-cv-876 |
| UNITED STATES SPACE FORCE, *et* | § | Judge Mazzant |
| *al.*, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Agency and Official-Capacity Defendants' Motion to Dismiss (Dkt. #23) as well as General Saltzman's Motion to Dismiss the Individual Capacity Claims (Dkt. #28). Having considered the Motions and the relevant pleadings, the Court finds that the Agency and Official-Capacity Defendants' Motion to Dismiss (Dkt. #23) should be **DENIED**, while General Saltzman's Motion to Dismiss the Individual Capacity Claims (Dkt. #28) should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

## I.    The Invitation to the Retirement Ceremony

This is a First Amendment case involving a Major in the United States Air Force Reserve who is an attorney in his civilian life (Dkt. #1 at ¶ 5). Plaintiff "is a Christian whose sincerely held beliefs animate his actions, viewpoints, and speech" (Dkt. #1 at ¶ 6). His friend, Senior Master Sergeant (SMSgt) Duane Fish, shares Plaintiff's personal faith and invited him to offer remarks at SMSgt's Fish's retirement ceremony (the "Ceremony") in Hawaii in June 2021 (Dkt. #1 at ¶ 6). Plaintiff obliged (*See* Dkt. #1 at ¶ 8). According to Plaintiff, he acted in a purely civilian status when he traveled to the Ceremony and when he gave the remarks (*See* Dkt. #1 at ¶ 7). In June 2021,

Plaintiff traveled to the Ceremony, at his own expense, and treated the occasion as an opportunity to deliver the remarks and enjoy a family vacation in the Aloha state (*See* Dkt. #1 at ¶ 8).

## II.    Plaintiff's Remarks at the Ceremony

On June 11, 2021, Plaintiff attended the Ceremony in Pearl Harbor aboard the Battleship Missouri Memorial (Dkt. #1 at ¶ 9). "In keeping with the tradition of military retirement and other private formal ceremonies, [Plaintiff] wore his Aire Force uniform to the event" (Dkt. #1 at ¶ 86). Midway through the Ceremony, Plaintiff gave his remarks to the attendees (Dkt. #1 at ¶ 89). Plaintiff praised the dedication of SMSgt Fish's wife and daughter, lauded SMSgt Fish's courage and competence as an airman, and shared anecdotes about SMSgt Fish (*See* Dkt. #1 at ¶¶ 89–90). Plaintiff then shifted his remarks to another topic important to him.

Plaintiff began encouraging people to practice in their own lives the courage and virtue that SMSgt Fish exemplified (Dkt. #1 at ¶ 91). Plaintiff alleges that "he expressed his personal concerns about the negative impact of politicization within the miliary, and how it tends to squelch the courage, integrity, and competence that SMSgt Fish exemplified" (Dkt. #1 at ¶ 92). Plaintiff "worried that radical factions in our wider culture have brought the culture war inside the [Department of Defense (the "DOD")], and that politicization of the military would be a death knell for courage and competence" (Dkt. #1 at ¶ 92 (citation modified)). During these remarks, Plaintiff drew on teachings and thought of "Eastern Orthodox Christian and writer Aleksandr Solzhenitsyn" regarding "the corrosive culture consequences of dishonesty and self-deception" (Dkt. #1 at ¶ 93). Plaintiff "warned against a growing cancel culture in the military that, in his view, undermines truth and integrity" (Dkt. #1 at ¶ 93 (citation modified)). According to Plaintiff, "this cancel culture pressures military members to deceive themselves about objective realties they know to be true" and gave two examples to bolster his point, men can't birth babies and boys should not

be allowed in girls' locker rooms (Dkt. #1 at ¶ 94). Plaintiff "expressed his faith-based belief that forcing people to deny such self-evident beliefs requires constant self-deception which can habituate us to dishonesty and cause us to lose our grip on objective reality, making us less capable and less effective in our world. By making the lie a part of ourselves, we become incompetent" (Dkt. #1 at ¶ 95 (citation modified)). As part of Plaintiff's "warning against politicization, he referenced recent [DOD]-wide extremism training that he attended, in which he was relieved to see that [his] teammates recognized that training for what it was, a thinly veiled flex of political power" (Dkt. #1 at ¶ 96). Plaintiff alleges that "his expression of these views was an expression of his religious exercise as a devout Christian who believes that speaking truth is an essential element of living out his faith and was also an expression of his private speech on matters of public concern" (Dkt. #1 at ¶ 97). Plaintiff concluded his remarks with a quote from "Candle in the Wind," a play by Aleksandr Solzhenitsyn that expressed Plaintiff's belief that a person's religious and moral duty is to speak truth in the world (Dkt. #1 at ¶ 99). Plaintiff believes that his remarks at the Ceremony are in accordance with this duty to profess truth into the world (Dkt. #1 at ¶ 100). According to Plaintiff, he "observed a positive reaction from attendees, many of whom he knew shared his faith-based values" (Dkt. #1 at ¶ 101).

Once Plaintiff concluded his remarks, he alleges that he experienced only positive reactions with attendees and was asked by the spouse of another active-duty member in attendance if Plaintiff would speak at her husband's upcoming retirement ceremony from the Air Force (Dkt. #1 at ¶ 102). Unbeknownst to Plaintiff at the time, not all attendees approved of his remarks.

### III.    The Aftermath of the Ceremony

A week after the Ceremony, SMSgt Fish called Plaintiff and informed Plaintiff that "an individual(s) from the Naval quartet had filed a complaint against [Plaintiff] due to his remarks"

(Dkt. #1 at ¶ 103). On July 9, 2021, Plaintiff received an email from Major Derek Law, who explained he was directed by Plaintiff's supervisor to perform an inquiry into the remarks Plaintiff made at the Ceremony (Dkt. #1 at ¶ 105). On July 26, 2021, Lieutenant Colonel ("Lt Col") Peter J. Schmick emailed Plaintiff with "excerpts from statements made by unspecified persons apparently present for his remarks" (Dkt. #1 at ¶ 106). The remarks included the following: (1) "members were offended by the guest speakers comments;" (2) "he definitely shared some personal view points that should not have been shared in the retirement ceremony;" (3) "informed that there were some inappropriate comments made by the guest speaker at the subject event targeted at the LGBT community and other political issues currently taking place in our country;" (4) "at this event feeling extremely uncomfortable and insulted;" (5) "let you know that such comments are unnecessary and have no place in a ceremony like this;" (6) "his comments were hurtful to a group of people" (Dkt. #1 at ¶ 106). According to Plaintiff, this email excluded the following positive assessment of the remarks from a witness: "professional and respectful. I was not offended by it and there was nothing said or done that was unethical, illegal, or immoral . . . . It is hard to understand how any person may have been offended by his comments as they were not directed at any person or group" (Dkt. #1 at ¶ 107).

## IV.    The Letter of Admonishment

In September 2021, Plaintiff received a Letter of Admonishment ("LOA"), dated August 25, 2021, signed by Lt Col Schmick (Dkt. #1 at ¶ 108). The LOA reprimanded Plaintiff for his remarks at the Ceremony and stated that Plaintiff's speech has been "insubordinate, disrespectful, and unbecoming for an officer in the military" (Dkt. #1 at ¶ 109). The LOA condemned specific remarks, including Plaintiff's reference to "radical political factions, how the military is fostering a culture of incompetence and cowardice, and [DOD]-wide extremism training as a thinly veiled

4

flex of political power" (Dkt. #1 at ¶ 110 (citation modified)). The LOA also stated that Plaintiff's remarks were improper because "military members are to remain apolitical and must respect the chain of command" (Dkt. #1 at ¶ 111 (citation modified)). Further, the LOA referenced various military members who expressed displeasure with Plaintiff's remarks and noted that, while Plaintiff had the right to voice his opinions concerning political matters, he cannot imply those beliefs are representative of the Air Force and his comments cannot be contemptuous (Dkt. #1 at ¶ 112). The LOA instructed Plaintiff to exercise better judgment and use appropriate venues for expressing personal views that align and comport with Air Force Instructions (*See* Dkt. #1 at ¶ 113). According to Plaintiff, Lt Col Schmick attached statements and excerpts from six witnesses from the initial complaint as well as the witness who positively viewed Plaintiff's comments (Dkt. #1 at ¶ 114).

On November 5, 2021, Plaintiff submitted a response to Lt Col Schmick, requesting that the Air Force rescind the LOA (Dkt. #1 at ¶ 115). On December 17, 2021, Staff Judge Advocate Andrea M. Hall denied Plaintiff's request (Dkt. #1 at ¶ 116). On January 26, 2022, Plaintiff submitted his first appeal to Colonel James T. Horne (Dkt. #1 at ¶ 117), which Staff Judge Advocate Colonel Ted Richard denied on February 4, 2022 (Dkt. #1 at ¶ 118). On April 12, 2022, Plaintiff filed a second appeal with Brigadier General Douglas A. Schiess (Dkt. #1 at ¶ 119), which he denied on April 18, 2022 (Dkt. #1 at ¶ 120). On July 20, 2022, Plaintiff submitted a third appeal to Lieutenant General Stephen Whiting (Dkt. #1 at ¶ 121), who denied it on July 29, 2022 (Dkt. #1 at ¶ 122). Undeterred, Plaintiff filed his fourth appeal to the Chief of Space Operations, U.S. Space Force (Dkt. #1 at ¶ 123). On December 16, 2022, Brigadier General Gail E. Crawford, the Director

of the Air Force's Military Justice and Discipline division, issued a denial of the appeal on behalf of the current Chief of Space Operations, General B. Chance Saltzman (Dkt. #1 at ¶ 124).

Plaintiff claims that the LOA will continue to adversely impact his career because it is in his record and increases the risk of future, more severe adverse action (Dkt. #1 at ¶ 126). He worries that the LOA could impact his ability to attain leadership positions, lead to denials of promotion, and removal from the promotion list, and perhaps lead to criminal prosecution by court-martial (Dkt. #1 at ¶ 126). Plaintiff avers that the LOA has already chilled and hindered Plaintiff's ability to engage in his rights to freedom of speech and religion (Dkt. #1 at ¶ 127)

## V.    The Lawsuit Before the Court

On October 3, 2023, Plaintiff filed this suit (Dkt. #1). Plaintiff raises the following claims:

1.  Administrative Procedure Act Jurisdictional Claim pursuant to 5 U.S.C. § 706(2)(C);

2.  Religious Freedom Restoration Act Claim pursuant to 42 U.S.C. § 2000bb-1;

3.  Administrative Procedure Act Constitutional Claim pursuant to 5 U.S.C. § 706(2)(B) arguing that the LOA is contrary to the Free Exercise of Religion;

4.  Administrative Procedure Act Constitutional Claim pursuant to 5 U.S.C. § 706(2)(B) arguing that the LOA is contrary to the Freedom of Speech;

5.  Administrative Procedure Act Claim pursuant to 5 U.S.C. § 706(2)(A) claiming that the LOA violates the Defendants' Regulations;

6.  Administrative Procedure Act Claim pursuant to 5 U.S.C. § 706(2)(A) arguing that the LOA is arbitrary, capricious, and an abuse of discretion; and

7.  The LOA violates Plaintiff's First Amendment Rights[1]

(Dkt. #1 at pp. 24–46).

On February 1, 2024, the Agency and Official-Capacity Defendants (collectively, the "Defendants") filed their Motion to Dismiss (Dkt. #23). Plaintiff filed his Response on March 15,

---

[1] Plaintiff's Complaint seems to indicate that he brings a claim under the First Amendment itself and cites nothing aside from the Amendment itself (*See* Dkt. #1 at pp. 44–46).

2024 (Dkt. #38) and Defendants filed their Reply on March 29, 2024 (Dkt. #43). Also, on February

12, 2024, General Saltzman filed his Motion to Dismiss the Individual Capacity Claims (Dkt. #28).

Plaintiff filed his Response on March 27, 2024 (Dkt. #41). General Saltzman filed his Reply on

April 16, 2024 (Dkt. #46). Both Motions are ripe for adjudication.

## LEGAL STANDARD

### I.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject

matter jurisdiction when the district court does not have statutory and constitutional power to

adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th

Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court

will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal

merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint

supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented

by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d

548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.

1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and

construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*,

26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1)

and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject

matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The

Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain

that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

## II.    Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that in personam jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a prima facie case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *Id.*

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys. Int'l*

*Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Defendants who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their actions." *Burger King Corp.*, 471 U.S. at 473 (citing *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated[] . . . or of the unilateral activity of another party or third person." *Id.* at 475 (citation modified).

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v.*

*Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. "[I]t is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

### III.    Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). Once a defendant raises improper venue by motion, "the burden of sustaining venue will be on [the] Plaintiff." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-CV-699, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008). "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:16-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Ambraco*, 570 F.3d at 238. If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

### IV.    Rule 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each

claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts

to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

### I. The Agency and Official-Capacity Defendants' Motion to Dismiss (Dkt. #23)

Thought somewhat unclear, Defendants urge the Court to dismiss all claims under Rule 12(b)(1) because Plaintiff failed to exhaust his administrative remedies (*See* Dkt. #38; Dkt. #43). Further, Defendants claim that Plaintiff has failed to state plausible claims for relief. The Court begins, as it must, with its power to hear these claims—subject matter jurisdiction. *See Ramming*, 281 F.3d at 161.

### A. Rule 12(b)(1)

The Court has subject matter jurisdiction over Plaintiff's claims and Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) (Dkt. #23) must be denied.

#### 1. Subject Matter Jurisdiction and *Mindes* Abstention

The Court has subject matter jurisdiction because it has federal question jurisdiction and the *Mindes* abstention doctrine does not apply to this case. 28 U.S.C. § 1331; *See generally Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971). Here, Plaintiff asserts claims under the U.S. Constitution and federal statutes—the Administrative Procedure Act ("APA") and the Religious Freedom Restoration Act ("RFRA") (Dkt. #1 at pp. 24–46). Consequently, the Court has subject matter jurisdiction because Plaintiff properly invokes the Court's federal question jurisdiction. *Wilkerson*

13

*v. Univ. of N. Tex.*, 223 F. Supp. 3d 592, 600–01 (E.D. Tex. 2016) (citing *Empire Healthchoice Assur. Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006)). Further, *Mindes* abstention does not apply to Plaintiff's RFRA claims. *Crocker v. Austin*, 115 F.4th 660, 666 (5th Cir. 2024). Now, the Court must determine whether *Mindes* abstention ought to apply to Plaintiff's APA claims.

   *Mindes* abstention does not apply to the APA claims. "*Mindes* requires courts to examine the substance of a plaintiff's allegation implicating internal military affairs in light of the policy reasons behind nonreview of military matters." *U.S. Navy Seals 1–26*, 27 F.4th 336, 346 (5th Cir. 2022) (citation modified). First, the Court must "determine whether the plaintiff has alleged a deprivation of constitutional rights or that the military violated statutes or its own regulations." *Id.* Second, the Court must assess "whether the plaintiff has exhausted all available intra-service corrective measures." *Id.* Next, "if the plaintiff satisfies both criteria," the Court considers the following series of factors: "(1) the nature and strength of the plaintiff's challenge to the military determination; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved." *Id.* at 346–47 (citation modified).

   a.    *Mindes* Step One

   Plaintiff satisfies the first *Mindes* requirement. Here, Plaintiff alleges a "deprivation of constitutional rights," specifically a violation of his First Amendment rights and consequently, the APA (Dkt. #1 at pp. 28–39, 45–46). *See U.S. Navy Seals 1–26*, 27 F.4th at 346–47. Thus, this requirement is satisfied.

   b.    *Mindes* Step Two

   Although Plaintiff did not exhaust his administrative remedies, he is exempt from the requirement. Plaintiff claims that he appealed the LOA "as far as he needed to" and secured a final,

appealable, agency action (Dkt. #38 at p. 15). In any event, even if he did not exhaust his administrative remedies, Plaintiff argues that he is exempt from the administrative exhaustion requirement because he raises substantial constitutional concerns (*See* Dkt. #38 at pp. 15–17). Defendants disagree and urge the Court to dismiss all of Plaintiff's claims (Dkt. #43 at pp. 2–4). As explained below, Plaintiff's argument carries the day.

As an initial matter, the Court concludes that Plaintiff did not exhaust his administrative remedies because he could have appealed to the Air Force Board for the Correction of Military Records—but he did not (Dkt. #23 at p. 8; Dkt. #43 at p. 3; *see* Dkt. #38 at p. 17 ("[Plaintiff] exhausted his administrative remedies to the extent he needed to do so.")). *Lane*, 529 F.3d at 557. Be that as it may, Plaintiff's failure to exhaust his administrative remedies is not fatal because he is exempt from the exhaustion requirement.

"Under the rule of requiring exhaustion of administrative remedies prior to judicial review, a party may not ask a court to rule on an adverse administrative determination until he has availed himself of all possible remedies within the agency itself." *Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980). Usually, this requirement applies in the military context too; however, there are exceptions to the exhaustion requirement. *See id.* In *Von Hoffburg v. Alexander*, the Fifth Circuit recognized, in the military discharge context, that there are four exceptions: (1) only those remedies which provide a genuine opportunity for adequate relief need be exhausted; (2) exhaustion is not required when the plaintiff may suffer irreparable injury if he is compelled to pursue his administrative remedies; (3) the requirement does not apply when administrative appeal would be futile; (4) exhaustion may not be required if the plaintiff has raised a substantial constitutional question. *Von Hoffburg*, 615 F.3d at 638. The Fifth Circuit recently extended these exceptions

beyond just the military discharge context to include other situations, such as active-duty service members challenging a Covid-19 vaccination policy. *See U.S. Navy Seals 1–26*, 27 F.4th at 347. Here, Plaintiff's Complaint raises substantial questions about the First Amendment using the APA as a vehicle for these claims, such as whether he can be admonished for comments he made pursuant to his religious beliefs while not on active duty. *Id.* at 347. Thus, the Court concludes that Plaintiff satisfies the fourth exception to the exhaustion requirement. Now, the Court must assess the *Mindes* factors. *Id.* at 346–47.

c.    The *Mindes* Factors

The weight of the *Mindes* Factors cuts in Plaintiff's favor. Since Plaintiff satisfied the first two *Mindes* inquiries, the Court must now consider the following series of factors: "(1) the nature and strength of the plaintiff's challenge to the military determination; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved." *See U.S. Navy Seals 1–26*, 27 F.4th at 346–47 (citation modified).

First, the nature and strength of Plaintiff's claims weigh in favor of granting judicial review. *U.S. Navy Seals 1–26*, 27 F.4th at 347. As the Fifth Circuit emphasized, "[c]onstitutional claims are 'normally more important than those having only statutory or regulatory base[.]'" *Id.* at 348 (quoting *Mindes*, 453 F.2d at 201). Here, all of Plaintiff's claim involve the First Amendment and raise an important question on what limits exist when a service member, not on active duty, makes statements regarding his religious beliefs at a retirement ceremony. Indeed, the military is a unique context that requires a careful balance between the First Amendment and the importance of the chain of command. But the Supreme Court and Fifth Circuit continue to remind lower courts about the importance of vociferously guarding the First Amendment. *See U.S. Navy Seals 1–26*, 27 F.4th

16

at 347–48; *cf. Mahmoud v. Taylor*, 145 S. Ct. 2332, 2350 (2025) (noting that all government instructions may not place unconstitutional burdens on religious exercise). Accordingly, the Court finds that the first factor cuts in Plaintiff's favor.

Second, the potential injury to Plaintiff if review is refused is somewhat significant and favors judicial review. At this juncture, Plaintiff's alleged injury is not as strong as the Plaintiffs in *United States Navy Seals 1–26 v. Biden. See U.S. Navy Seals 1–26*, 27 F.4th at 348. There, the Fifth Circuit noted that the plaintiffs faced serious adverse consequences such as formal reprimands, removal from duties, or other severe consequences if they refused to receive the Covid-19 vaccine. *See id.* at 339–40. Here, Plaintiff claims the LOA "increases the risk of future, more severe adverse action" such as stifling his ability to receive promotions or cause more serious disciplinary action in the future (Dkt. #1 at ¶ 126). Further, he claims that the LOA has chilled his speech and limited him from exercising his rights to freedom of speech and religion and could negatively impact what cases he could take as a civilian attorney (Dkt. #1 at ¶¶ 127–28). The concerns about future consequences seem speculative, but the chilling effect on Plaintiff's exercise of speech and religion are considerable because "[t]he loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *U.S. Navy Seals 1–26*, 27 F.4th at 348 (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012)). Thus, the Court finds that this factor also cuts in Plaintiff's favor.

Third, the type and degree of anticipated interference with the military function is minimal and cuts in Plaintiff's favor. As the Fifth Circuit noted, "there will always be some interference when review is granted, courts ought to abstain only where the interference would be such as to seriously imped the military performance of vital duties." *U.S. Navy Seals 1–26*, 27 F.4th at 348

(citation modified). That is not the case here. Defendants already issued the LOA and it is part of Plaintiff's record (*See* Dkt. #1 at ¶¶ 126–27). Permitting this case to continue does not "seriously imped" Defendants' performance of vital duties, it merely requires them to litigate this case to a resolution. *Id.* at 348 (citation modified). Thus, the Court finds that this factor also favors Plaintiff.

Fourth, "the extent to which military expertise or discretion is involved" is neutral. *U.S. Navy Seals 1–26*, 27 F.4th at 349. "Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions." *Mindes*, 453 F.2d at 201–02. Further, "[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments[.]" *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). Then again, "[g]enerals don't make good judges—especially when it comes to nuanced constitutional issues." *U.S. Navy Seals 1–26*, 27 F.4th at 349 (quoting *Air Force Officer v. Austin*, 588 F. Supp. 3d 1338, 1351 (M.D. Ga. 2022)). Plaintiff's claims are in a gray area. From one perspective the LOA could relate to promotions or orders directly related to military functions, such as comporting with military procedure and policy. *See Mindes*, 453 F.2d at 201–02. Similarly, the LOA does relate to the control of military personnel, an area in which the courts are not as adept. *See Gilligan*, 413 U.S. at 10. However, Plaintiff's Complaint raises alleged violations of the First Amendment, which should not be easily disregarded. Accordingly, both parties' arguments have merit and the Court finds that this factor is neutral.

In conclusion, three of the *Mindes* factors cut in Plaintiff's favor and one is neutral. Therefore, the Court concludes that Plaintiff's claims are justiciable and survive Defendants' Motion to Dismiss pursuant to Rule 12(b)(1). *Cf. U.S. Navy Seals 1–26*, 27 F.4th at 349.

### B.    Rule 12(b)(6)

After reviewing Plaintiff's Complaint and the arguments presented in the briefs, the Court finds that Plaintiff has stated plausible claims for relief under Rule 12(b)(6). Therefore, dismissal is unwarranted and Defendants' Motion (Dkt. #23) should be denied as to Rule 12(b)(6).

## II.    General Saltzman's Motion to Dismiss the Individual Capacity Claims (Dkt. #28)

The *Feres* doctrine does not apply so Plaintiff's claims are justiciable; thus, the Motion is denied as to Rule 12(b)(1). However, the Court lacks personal jurisdiction over General Saltzman so the Court will grant the Motion as to Rule 12(b)(2) and transfer the claims against General Saltzman to the District of Columbia. The Court expresses no opinion on the other arguments contained in the Motion to Dismiss as that is the province of the transferee court. *Cf. BuzzBallz, LLC v. MPL Brand NV, Inc.*, No. 1:23-CV-1115-RP, 2024 WL 3282492, at *1 n.1 (W.D. Tex. July 2, 2024) ("Because the Court finds that transfer is warranted in this case, the Court does not address [Defendant's] motion to dismiss.").

### A.    Rule 12(b)(1)

Once again, the Court begins with subject matter jurisdiction. The *Feres* doctrine does not apply, thus, Plaintiff's claims are justiciable.

#### 1.    The *Feres* Doctrine Generally

"The *Feres* doctrine is a narrow exception to tort liability under federal statute." *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017). Under the doctrine, "[t]he Government is not liable under the Federal Tort Claims Act [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to services." *Id.* (citing *Feres v. United States*, 340 U.S. 135, 146 (1950)); *see also Filer v. Donley*, 690 F.3d 643, 649–50 (5th Cir. 2012) ("*Feres* broadly prohibits tort suits where a service person's injuries arise out of or are in the course of activity

incident to service.") (citation modified). "After *Feres*, the Supreme Court 'authorized a suit for damages against federal officials whose actions violated an individual's constitutional rights . . . .'" *Id.* (quoting *Chappell v. Wallace*, 462 U.S. 296, 298 (1983). In *Chappell v. Wallace*, the Supreme Court "limited the *Bivens* remedy by holding 'that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations.'" *Morris*, 852 F.3d at 419 (quoting *Chappell*, 462 U.S. at 305). The Fifth Circuit has noted that "[a]lthough the Supreme Court has only considered [the *Feres* doctrine] in the context of FTCA and *Bivens* claims, [the Fifth Circuit has] held that *Feres* bars all lawsuits based on injuries incident to military service." *Id.* at 420 (citing *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1035–36 (5th Cir. 1986)).. Recently, the Fifth Circuit permitted a case to proceed when the plaintiffs raised claims for *injunctive* relief under RFRA. *U.S. Navy Seals 1–26*, 27 F.4th at 341 n.2. Here, Plaintiff seeks money damages against General Saltzman in an *individual* capacity (*See* Dkt. #1). As such the *Feres* doctrine will preclude Plaintiff's claims if the "incident-to-service test" is satisfied. *See Morris*, 852 F.3d at 420–21.

### 2.    The Incident-to-Service Test

After weighing the factors, the Court finds that incident-to-service test is not satisfied, so the *Feres* doctrine does not bar Plaintiff's claims against General Saltzman. *See id.* The test requires courts to consider three factors: (1) the duty status of the service member; (2) the place where the injury occurred; and (3) the activity in which the service member was engaged at the time of the injury. *Id.* at 421 (citing *Walch v. Adjutant Gen.'s Dep't of Texas*, 533 F.3d 289, 297 (5th Cir. 2008)).

Plaintiff's duty status weighs in favor of finding that his claims are justiciable. The Fifth Circuit has noted that this is sometimes the most important factor and emphasizes that duty status is "key because it reveals the relation between the service member and the military at the time of

the injury." *Regan v. Starcraft Marine, LLC*, 524 F.3d 627, 637 (5th Cir. 2008); *see also West v. Rieth*, 705 F. App'x 211, 214 (5th Cir. 2017). Accordingly, this factor elucidates "how truly *incident* to service [the injury] was." *Starcraft Marine, LLC*, 524 F.3d at 637. In this case, Plaintiff was an inactive reservist when he attended the Ceremony and when he received the LOA (Dkt. #1 at ¶¶ 85, 108). This status is in stark contrast to service members who are on active duty when injured. *Cf. West*, 705 F. App'x at 214. Accordingly, the Court finds that this factor weighs in favor of justiciability. *Morris*, 852 F.3d at 419.

The Court finds that the second factor also cuts in favor of justiciability. *See Morris*, 852 F.3d at 421. "In the Fifth Circuit, the physical location of the injury is relevant for the incident to service issue. The purpose of this factor is to determine where the service member was at the time of the injury and whether he was engaged in an activity incident to service." *West*, 705 F. App'x at 214 (citation modified). Here, in September 2021, Plaintiff was at home and on inactive status, when he was injured by receiving the LOA and having it become part of his record (*See* Dkt. #1 at ¶ 108). The current record before the Court does not indicate that Plaintiff "was engaged in an activity incident to service" when Plaintiff was injured by the LOA. *West*, 705 F. App'x at 214 (citation modified). Thus, the Court finds that this factor also weighs in favor of justiciability.

The third factor—the activity engaged in at the time of the injury—is neutral. *Starcraft Marine, LLC*, 524 F.3d at 640. "The purpose of the third prong is to determine whether the activity giving rise to the injury 'served some military function.'" *West*, 705 F. App'x at 214–15 (quoting *Starcraft Marine, LLC*, 524 F.3d at 640). Here, the activity giving rise to the injury can be one of two options. First, the activity could be Plaintiff's remarks at the Ceremony which prompted Defendants to investigate and eventually issue the LOA (*See* Dkt. #1 at ¶ 9). If this were the case,

the injury would not be incident to service because at the time, Plaintiff was an inactive reservist (*See* Dkt. #1 at ¶ 85). Second, the activity could be the investigation Defendants conducted, which eventually led to the creation of the LOA that harmed Plaintiff when it was sent to him and made a part of his record (*See* Dkt. #1 at ¶¶ 108, 126). This scenario would make the injury incident to service because it would arise from the activity of a formal military investigation into Plaintiff. *See West*, 705 F. App'x at 214–15 (noting that the activity the service member complained about was a formal Marine investigation into allegations of sexual misconduct and counseled in favor of applying the *Feres* doctrine). The Court finds both scenarios are supported by the record and thus finds that this factor is neutral.

In conclusion, at this juncture, the Court finds that Plaintiff's claims are not incident to service because two factors cut in favor of justiciability and one is neutral. Therefore, the *Feres* doctrine does not bar his individual claims against General Saltzman. *But cf. Schoemer v. United States*, 59 F.3d 26, 28 (5th Cir. 1995) (district court initially determined *Feres* did not bar suit but eventually held the opposite at summary judgment). The Court must now determine whether it has personal jurisdiction over General Saltzman.

### B.    Rule 12(b)(2)

The Court lacks personal jurisdiction over General Saltzman. Exercising its discretion, the Court will sever the individual capacity claims and transfer them to the District of Columbia.

#### 1.    Personal Jurisdiction Generally

The Court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020). First, absent a controlling federal statute regarding service of process, the Court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the Court must

22

establish whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *Id.*

Here, the Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Those "minimum contacts" can give rise to two types of personal jurisdiction: general or specific. *See, e.g.*, *Frank*, 947 F.3d at 336. General jurisdiction exists only when the defendant's contacts with the forum are so "continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation modified). Specific jurisdiction exists if the asserted claims arise out of or relate to the defendant's contacts with the forum. *See, e.g.*, *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 197 (5th Cir. 2019). The Court does not have general or specific jurisdiction over General Saltzman.

a.    General Jurisdiction

As stated, general jurisdiction exists only when the defendant's contacts with the forum are so "continuous and systematic as to render them essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (citation modified). Substantial, continuous, and systematic contact with a forum state is a difficult standard to meet and requires "extensive contacts" between a defendant and the forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

The parties do not claim that the Court has general jurisdiction over General Saltzman (*See* Dkt. #28; Dkt. #41; Dkt. #46). The Court finds that it does not have general jurisdiction over him because he does not have extensive contacts with Texas. *Johnston*, 523 F.3d at 609. The Court must now consider whether it has specific jurisdiction over General Saltzman.

    b.  Specific Jurisdiction

Specific jurisdiction is proper when the plaintiff alleges a cause of action that arises from or relates to the defendant's contacts with the forum. *See, e.g.*, *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). In evaluating whether due process permits the exercise of specific jurisdiction, courts consider: (1) whether the defendant has "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Carmona*, 934 F.3d at 193 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

For a defendant to have sufficient minimum contacts, it must have "purposefully availed [itself] of the benefits and protections of the forum state such that [it] should reasonably anticipate being haled into court there." *Carmona*, 934 F.3d at 193 (internal quotations omitted). This requirement is the "constitutional touchstone" of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Accordingly, establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.* at 475 (citation modified). If the plaintiff successfully satisfies the first two prongs of the specific jurisdiction analysis, "the burden

24

shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271.

The Court also lacks specific jurisdiction over General Saltzman because he has not purposefully availed himself of Texas. Plaintiff claims that General Saltzman's denial letter establishes minimum contacts with Texas and enables the Court to hale him into the Lone Star state to litigate the claims against him (Dkt. #41 at pp. 16–21). More specifically, Plaintiff alleges that General Saltzman's refusal to rescind the LOA injures Plaintiff because the refusal unlawfully burdened Plaintiff's ability to freely exercise his sincerely held religious beliefs (Dkt. #41 at p. 16). Plaintiff's argument is unpersuasive. Here, General Saltzman was merely the last individual in a long line of officials that heard and denied Plaintiff's appeal (*See* Dkt. #1 at ¶ 124). Further, the mere mailing of the denial into Texas is insufficient to constitute purposeful availment of the forum because Plaintiff's conduct, residing in Texas, caused General Saltzman to direct the denial into the state (*See* Dkt. #1). *Def. Distributed v. Grewal*, 971 F.3d 485, 495 (5th Cir. 2020) ("[I]t is the defendant's contacts with the forum state, and not just the plaintiff, that must drive the personal jurisdiction analysis"); *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."). In this case, Plaintiff is the only link between General Saltzman and Texas and that is insufficient to constitute purposeful availment. Accordingly, General Saltzman does not have minimum contacts with the forum. Thus, the Court lacks specific jurisdiction over General Saltzman.

### 2.    Transfer to the District of Columbia

Once a court determines that it lacks jurisdiction, Section 1631 empowers the court to decide whether to dismiss the case or, in the interest of justice, to transfer it to a court that has jurisdiction. *Bluestone Partners, LLC v. Lifecycle Constr. Servs., LLC*, 642 F. Supp. 3d 560, 567 (E.D.

Tex. 2022) (citation modified); 28 U.S.C. § 1631. "A case may be transferred under Section 1631 when: (1) the transferee court would have been able to exercise jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interests of justice." *Id.* Since the Court determined that it lacks personal jurisdiction over General Saltzman, the second requirement for a Section 1631 transfer is established. The Court will analyze the remaining requirements.

As to the first requirement, the letter to General Saltzman was mailed to his office in Washington, D.C. (*See* Dkt. #28-19 at p. 2). Accordingly, the District of Columbia has personal jurisdiction over General Saltzman and the action can properly continue in that forum. *See Bluestone Partners, LLC*, 642 F. Supp. 3d at 567.

As to the third requirement, the interests of justice favor transfer rather than dismissal. Here, "[d]ismissal would require [the] plaintiff to incur new filing fees and other costs, and a dismissal could raise issues regarding limitations." *Mr Showers, LLC, v. Mr. Shower Door, Inc.*, No. 4:21-CV-520, 2021 WL 5918921, at *6 (E.D. Tex. Nov. 22, 2022) (citation modified).

Thus, the Court will sever the individual capacity claims against General Saltzman and transfer them to the District of Columbia. The Court expresses no opinion as to other arguments relating to dismissal, those arguments will be determined by the transferee court.

### CONCLUSION

It is therefore **ORDERED** that the Agency and Official-Capacity Defendants' Motion to Dismiss (Dkt. #23) is hereby **DENIED**, while General Saltzman's Motion to Dismiss the Individual Capacity Claims (Dkt. #28) is hereby **GRANTED in part and DENIED in part**.

It is further **ORDERED** that the individual capacity claims against General Saltzman are hereby **SEVERED**. The Clerk is directed to **TRANSFER** those claims to the District of Columbia.

**IT IS SO ORDERED.**

**SIGNED this 9th day of September, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE